**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:13CR215 |
| | § | |
| | § | |
| JOSHUA MARK FORD | § | |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On June 3, 2015, the Court held a hearing on Defendant's Motion to Suppress Evidence and Statements from Stop and Search on November 23, 2012 (Dkt. 37), the matter having been referred to the undersigned by the Honorable Marcia A. Crone (*see* Dkt. 46). Having considered the evidence presented, the Court recommends that the motion be DENIED.

Defendant is charged in this matter with a violation of 21 U.S.C. § 841(a)(1), possession with the intent to manufacture and distribute methamphetamine and possession with the intent to distribute Gamma Hydroxybutrate ("GHB"), 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime, and 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

In his motion, Defendant seeks to suppress all contraband, weapons, computers, paraphernalia, and other physical evidence obtained as a result of the stop and search of Defendant's person and a vehicle he was driving on November 23, 2012, as well as any statements he subsequently made to law enforcement.

## FACTUAL BACKGROUND AND SUMMARY OF MOTION

Defendant was stopped by the Plano Police Department for failing to signal a lane change and driving erratically on Central Expressway in Plano, Texas on November 23, 2012. Defendant alleges that approximately seven minutes after the initial stop, an officer asked him to exit the car to check for signs of intoxication but that the officer did not conduct any formal field sobriety tests. Defendant alleges that, approximately five minutes after that, the officer patted Defendant down for weapons and found a baggie containing suspected narcotics inside, after which Defendant was arrested.

According to Defendant's motion, after he was arrested, officers discovered a pistol magazine and ammunition in his front pocket. Defendant was then handcuffed and put in a patrol car and the vehicle was searched. Officers recovered two pistols, methamphetamine, marijuana, prescription medication, drug paraphernalia, and a computer. Defendant was then transported to the jail where he was interviewed by Plano Police Detective Quillin.

Defendant argues that, although probable cause may have existed for the initial stop of the vehicle, officers' actions after the stop were unreasonable and the length of the stop was unreasonable under *Terry v. Ohio*. Defendant argues that the search of his person, the pat down, and the search of the vehicle he was driving were without a warrant or probable cause and were in violation of the Fourth Amendment.

The Government has filed a response in opposition. The Government argues that Defendant does not have standing to contest the search of the vehicle because he was not the registered owner

and has not established a reasonable expectation of privacy in the vehicle. The Government further argues that there was no prolonged detention of Defendant, that it was a proper stop under *Terry*, and that there was sufficient probable cause to search the vehicle without a warrant.[1]

**EVIDENCE PRESENTED**

At the hearing, the Government called Officer Matthew Eadler with the Plano Police Department. Eadler testified that on November 23, 2012, he stopped a vehicle driven by Defendant for failure to signal and erratic driving. Eadler testified that he believed that the driver of the vehicle was intoxicated. Once he pulled the car over, both the driver (Defendant) and passenger were slow to answer Eadler's questions and appeared to be intoxicated in their speech and movements.

Eadler spoke to Defendant while Defendant remained in the car. Eadler allowed another officer who arrived on the scene, Officer Jung, to speak to the passenger since she also appeared to be under the influence. Eadler testified that he spoke to Defendant while awaiting another unit to conduct a field sobriety tests. According to Eadler, it is department policy to not conduct a field sobriety test without a second unit.

The Government offered the dash camera video from Eadler's patrol car on the night of the stop. While Eadler is speaking to Defendant in the car, Officer Jung can be seen talking to the female passenger who is standing outside of the car. According to Eadler's testimony at the

---

[1]Defendant further argues that any statements he made to officers were not made voluntarily and were obtained in violation of *Miranda* and Art. 38.22 of the Texas Code of Criminal Procedure. At the hearing, the Government stated that it does not plan on using any statements made by Defendant after the November 2012 traffic stop. Based on this representation, Defendant withdrew his *Miranda* objection. Therefore, that portion of Defendant's motion is not addressed herein and is denied as moot.

suppression hearing as well as Eadler's comments on the video recording, Jung was attempting to determine the passenger's identity.

During the stop, Defendant told Eadler that he was going from Waxahachie, Texas to Dallas, Texas then changed story that he was traveling from Addison, Texas to Dallas, Texas. Defendant also told him that he had been in jail before.

According to Eadler, as part of the stop, he ran Defendant's driver's license. Eadler could not remember when exactly during the stop he ran it or what the results were.

Eadler testified that, as they continued to wait for the verification of the passenger's identity, he ultimately returned to Defendant's car, asked Defendant if anything illegal was in the car and then asked him to step out of the car. Eadler then asked Defendant if he had any weapons. According to Eadler, Defendant said that he had a knife but then changed his story when Eadler told him that he was going to pat him down. Eadler testified that he could see in plain view a baggie in Defendant's pocket and that, based on his training and experience, he believed there were narcotics in the bag. Eadler testified that he did not manipulate any objects in Defendant's pockets in order to suspect there were narcotics in Defendant's pockets and that he could see part of the baggie when he stood over Defendant while talking to him.

Eadler then recovered a baggie containing methamphetamine and, upon fully patting Defendant down, found a firearm magazine. Defendant was placed in the squad car, and Eadler believed that officers then had probable cause to search the vehicle for narcotics. Upon a search of the vehicle, officers found guns, drugs and other items which they seized. Defendant also briefly

testified at the hearing regarding why he was driving a car not registered to him. Defendant testified that a man named Michael Griessen was the owner of the vehicle but that he was in the process of buying the vehicle and had made payments to Griessen. Defendant testified that he told Officer Eadler that Griessen was the registered owner of the vehicle. However, Defendant conceded that he did not tell officers that he was in the process of purchasing the vehicle at the time it was searched.

In addition to the video recording of the stop, the Government offered into evidence various photographs of materials seized and screen shots of the dash camera video recording. Defendant offered the police dispatch log for the evening of November 23, 2012.

## STANDING

The Government argues that Defendant lacks standing to challenge the search of the vehicle because he was not the registered owner. The Court disagrees.

A defendant must show he had a legitimate expectation of privacy in the area searched to establish a Fourth Amendment violation. *U.S. v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991). In determining whether a legitimate expectation of privacy exists, the Court should examine "whether the defendant has a possessory interest in the thing seized or the place being searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises." *Id.* at 906. In determining whether a defendant has a reasonable expectation of privacy sufficient to contest the validity of a

search, we inquire "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *U.S. v. Finley*, 477 F.3d 250, 258 (5th Cir. 2007).

Eadler testified that Defendant told him that - and Defendant can be heard on the video recording telling Eadler - he was not the registered owner of the car. Defendant nonetheless testified at the suppression hearing that he was in the process of buying the car and had made payments on it. There is no evidence before the Court to rebut Defendant's claims that he was purchasing the vehicle, and there is no authority before the Court to show that Defendant's failure to notify officers that he was in the process of purchasing the car would somehow deprive him of standing. And, although not offered into evidence specifically, the Court presumes Defendant had keys to the car since he was driving it, giving him the right to access and exclude access to the car. The Court finds that the evidence before it sufficiently establishes that Defendant has established an expectation of privacy as to the car and that such expectation of privacy was reasonable.

The Court will not recommend that the motion to suppress be denied based on a lack of standing. The Court thus evaluates whether the evidence seized from the car should be suppressed under the Fourth Amendment.

### SUPPRESSION ANALYSIS

The Fourth Amendment permits officers to stop and question an individual, even without probable cause where they have "reasonable suspicion to believe that criminal activity may be afoot."

*United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1 (1968). As part of such a stop, officers may handcuff individuals if the situation warrants. As explained by the Fifth Circuit:

> Under *Terry*, officers may briefly detain an individual on the street for questioning, without probable cause, when they possess reasonable, articulable suspicion of criminal activity. *See generally United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing and applying *Terry*). In order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry. *Michelletti*, 13 F.3d at 840. The purpose of the frisk is to afford an officer "the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed.2d 612 (1972). Accordingly, if the situation warrants it, officers may take further steps in connection with a *Terry* frisk, including handcuffing, as long as they are not "unreasonable in failing to use less intrusive procedures to safely conduct their investigation." *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000).

*U.S. v. Scroggins*, 599 F.3d 433, 440-41 (5th Cir. 2010).

As to reasonable suspicion, the Fifth Circuit has further explained as follows:

> Our assessment of reasonable suspicion is based on the totality of the circumstances. Furthermore, reasonable suspicion can vest through the collective knowledge of the officers involved in the search and seizure operation. The collective knowledge theory for reasonable suspicion applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. Reasonable suspicion can be formed by a confidential informant's tip so long as the information is marked by "indicia of reliability." In *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007), we discussed a number of the factors applied in determining whether a tip provides reasonable suspicion, including: "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale."

*United States v. Powell,* 732 F.3d 361, 369-70 (5th Cir. 2013).

In this case, Defendant does not contest the probable cause for the initial traffic stop but instead questions whether the duration of the stop was reasonable. To ensure clarity in the record, the Court agrees that there was probable cause to initially stop Defendant.

As to the matter in dispute, the Court also finds that there was no prolonged detention of Defendant. After stopping Defendant, Officers Eadler and Jung had a reasonable suspicion, given the totality of the circumstances before them, that criminal activity may be afoot.

Indeed, in this case, it is clear that the reasonable suspicion of criminal activity remained and only increased as time passed. *Scroggins*, 599 F.3d at 441 ("reasonable suspicion may 'ripen' or 'develop' into probable cause for an arrest if a *Terry* stop reveals further evidence of criminal conduct."). Eadler testified that, throughout the duration of the stop, officers were attempting to determine the identity of the passenger and to dispell all reasonable suspicions about the nature of Defendant and his passenger's activities and whether either was under the influence. It is clear that the stop and detention lasted no longer than necessary and that it was proper under *Terry*.

Primarily, Eadler testified that both Defendant and his passenger were unnaturally slow in their speech and movements, giving rise to a reasonable suspicion that they were intoxicated or under the influence of narcotics. Further, as the stop continued, Defendant revealed his criminal history (from a review of the video, Defendant appeared to volunteer this information without any specific questioning by Eadler) and was unclear about where he was coming from and going to. The Court further notes, as did Eadler, that Defendant should not have been driving in Plano, Texas if he were, as he told Eadler, traveling from Addison, Texas to Dallas, Texas. Such curious and inconsistent

statements further contribute to any officer's reasonable suspicion about Defendant's activities. The testimony and video recording presented clearly support the Government's allegation that Eadler's suspicions were not dispelled after pulling Defendant over, but that they only increased as Defendant talked.

That Eadler continued to talk to Defendant while Jung attempted to identify the passenger did not make the detention prolonged. Mere questioning of a defendant during a traffic stop is not a Fourth Amendment violation. *U.S. v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993). As explained by the Fifth Circuit:

> In a garden variety *Terry* stop, the nature of the questioning during a later portion of the detention may indicate that the justification for the original detention no longer supports its continuation. Thus, when a police officer reasonably suspects only that someone is carrying a gun and stops and frisks that person, the officer, after finding nothing in a pat down, may not thereafter further detain the person merely to question him about a fraud offense. This is not because the questioning itself is unlawful, but because at that point suspicion of weapons possession has evaporated and no longer justifies further detention. When the officer is satisfied that the individual is not carrying a gun, the officer may not detain him longer to investigate a charge lacking reasonable suspicion. At that point, continuation of the detention is no longer supported by the facts that justified its initiation. ***Thus, detention, not questioning, is the evil at which Terry's second prong is aimed.***

*U.S. v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993) (emphasis added).

Further, after he was asked to step out of the car, Defendant also changed his position on whether he had any weapons, at first telling Eadler that he had a knife but recanting upon being told that he would be patted down. Eadler's removal of Defendant from the car and subsequent pat down were within the scope of *Terry* to ensure officer safety.

As to any argument by Defendant that Eadler could not have recognized the material in Defendant's pocket as contraband, the Court is not convinced. Officer Eadler testified that he did not manipulate the material in Defendant's pocket but instead saw part of the baggie sticking out and, based on his training and experience, believed it to contain narcotics. The pat down was justified, and any suspicion that Defendant had a weapon was reasonable and the frisk of Defendant was justified for Eadler to safely continue.

As for the search of the vehicle, the Court finds it should not be suppressed either. The automobile exception to the warrant requirement "allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband." *U.S. v. Ortiz*, 781 F.3d 221, 229 (5th Cir. 2015) (internal citations omitted). Probable cause is determined by examining the totality of the circumstances. *Id.*

Here, although officers did not have a warrant to search the vehicle, the totality of the circumstances clearly gave rise to probable cause that the vehicle contained contraband. At the very least, the recovery of ammunition from Defendant's person gave rise to probable cause to believe that there was a corresponding firearm in the vehicle.

For these reasons and having considered all of the evidence before it, the Court recommends that Defendant's Motion to Suppress Evidence and Statements from Stop and Search on November 23, 2012 (Dkt. 37) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28

U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of June, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE