# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § | CASE NO. 4:13CR215 |
| | § § | |
| JOSHUA MARK FORD | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On June 3, 2015, the Court held a hearing on Defendant's Motion to Suppress Evidence and Statements from Stop and Search on June 26, 2013 and Request for *Franks v. Delaware* Hearing (Dkt. 38), the matter having been referred to the undersigned by the Honorable Marcia A. Crone (*see* Dkt. 47). Having considered the evidence presented, the Court recommends that the motion be DENIED.

Defendant is charged in this matter with a violation of 21 U.S.C. § 841(a)(1), possession with the intent to manufacture and distribute methamphetamine and possession with the intent to distribute Gamma Hydroxybutrate ("GHB"), 18 U.S.C. § 924(c), possession of a firearm in furtherance of a drug trafficking crime, and 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

### FACTUAL BACKGROUND AND SUMMARY OF MOTION

On June 26, 2013, Defendant parked his car, a black Toyota Land Cruiser, at an apartment complex at 3613 Frankford Road, Dallas, Denton County, Texas. While Defendant was seated in the vehicle, officers with the Denton Police Department approached his vehicle to arrest him on an

outstanding parole warrant. According to Defendant's motion, officers with the Denton Police Department had also been purportedly working with a cooperating individual who had requested Defendant deliver GHB to her at that location.

Defendant alleges that officers blocked his car with their cars. Officers allege that, upon their approach to his car, Defendant rammed their cars with his vehicle and pointed a weapon at them. Officers shot Defendant, striking his leg, which was ultimately amputated. After Defendant was removed from the vehicle to receive medical assistance, officers recovered a .38 revolver from the Land Cruiser.

Officers then obtained a search warrant for the Land Cruiser and, according to Defendant's motion, recovered the following items:

1) Thirteen plastic containers allegedly containing Gamma Hydroxybutrate (GHB)
2) Four cell phones
3) One Sig Sauer .40 caliber pistol
4) One pistol magazine with 11 rounds of .40 caliber ammunition
5) Forty six rounds of Winchester .40 caliber ammunition
6) Six baggies with Methamphetamine
7) Several prescription pills
8) Chemical items which potentially could be used in the manufacture of GHB
9) Numerous items of identification, and
10) Three zip or thumb drives, and
11) A laptop computer.

*See* Dkt. 38 at 2-3. Four separate search warrants were then obtained for the cell phones recovered from the Land Cruiser.

In his motion, Defendant seeks to suppress all physical, documentary, and other evidence seized in connection with his June 26, 2013 arrest and search of his person and Land Cruiser, arguing

that the search of the vehicle was without a warrant and without probable cause. Defendant further argues that a subsequent search of his vehicle was done without probable cause and was based on an affidavit which was based on reckless and misleading statements in violation of *Franks v. Delaware*. Defendant also argues that the search of the contents of cell phones recovered from the vehicle were based on search warrants which failed to establish probable cause and which were the result of the initial illegal search.

The Government has filed a response in opposition.

**EVIDENCE PRESENTED**

At the hearing, the Government called Detective Tony Salas with the Denton Police Department, Trent Jones, an investigator with the City of Denton, Baldamar Torres with the Denton Police Department, and Ranger Ronald Pettigrew with the Texas Department of Public Safety. All witnesses were present on the date of Defendant's shooting and arrest. The Government also offered numerous photographs of the materials seized from Defendant's car and the underlying search warrant affidavits for the Land Cruiser and cell phones.

*Salas*

Detective Tony Salas testified that a cooperating individual arranged for the purchase of GHB from Defendant at a Plano apartment complex on June 26, 2013. According to Salas, Defendant was shot after ramming his vehicle into two law enforcement vehicles (which were strategically positioned to block Defendant in) and brandishing a gun. Salas testified that he did not witness the shooting but saw Defendant on the ground after he was shot and being given medical aid by officers.

3

Salas testified that he was informed that officers tried to remove Defendant from his vehicle, that they saw a gun, that they shot him, and that they removed him from the car. Salas testified that the gun was recovered and removed from the vehicle after Defendant was removed from the car. A photograph admitted into evidence shows the holster still in Defendant's waistband after he was shot and removed from the car.

In describing Defendant's vehicle upon his arrival, Salas testified that the windows on the driver's side were broken out but that those on the passenger side were not. Salas testified that he believed that the windows were broken out by officers because they were tinted and officers were not able to see if anyone else was inside the vehicle upon approach. According to Salas, this is a common a tactical practice employed by the police department. Several photographs offered into evidence show Defendant's vehicle after it collided with the officers' vehicles blocking him in as well as the driver's side windows broken out.

Salas testified that even though they obtained a search warrant to search the vehicle, he believed that officers had probable cause to search the vehicle without a warrant and that the search warrant was obtained out of an abundance of caution because it resulted in an officer-involved shooting.

According to Salas, officers found several cell phones when executing the search warrant and he obtained additional search warrants for the contents of those phones. Salas testified that the contents of the cell phones contained information about the distribution of drugs.

*Jones*

The Government also called Trent Jones, an investigator with the City of Denton. Jones assisted Salas with the cooperating informant, and they were together when Defendant was shot and removed from his vehicle. Jones testified that, when he arrived at the scene of the shooting, he opened Defendant's car door in an effort to locate photo identification for Defendant. The first driver's license he found inside a wallet in the center console had a different name on it ("Trent Schneiter") than Defendant's. Because officers had arranged the buy-bust with Defendant, Jones testified, he was concerned that someone other than Defendant was involved in the tactical vehicle block-in and eventual shooting. As evidenced by the Government's photograph of the wallet and its contents, the picture on the driver's license was that of Defendant but the name was not his.

Jones testified that he then opened a backpack in the passenger seat to look for any other form of identification for Defendant and immediately saw narcotics. Jones testified that he also saw a water bottle next to the backpack in the passenger seat. Although Jones conceded that the water bottle was not visible from the driver's side, he testified that he saw it from the passenger side when he looked in. According to Jones, based on his training and experience, he believed that the water bottle contained GHB because it appeared thicker and cloudier than water.

Jones testified that he then stopped searching for additional identification because he believed that the scene was under control. According to Jones, he believed that he had probable cause to search vehicle without a warrant.

*Torres*

Baldamar Torres, a police officer for the City of Denton, testified that he was also a participant in the buy-bust operation as a member of the tactical team. He testified that, once another officer initiated the block of Defendant's car in his red vehicle, he observed Defendant inside the Land Cruiser and he observed Defendant accelerate his parked car in an attempt to ram law enforcement vehicles. Torres testified that he positioned himself by the red vehicle and gave Defendant instructions to raise his hands. Then, according to Torres, a flash bang was detonated in order to distract Defendant.

Torres testified that he positioned himself at the front driver's window after officers had forcibly broken it out and that he tried to grab Defendant but was unsuccessful. According to Torres, Defendant was still pressing the gas in an effort to ram the blocking vehicles. Torres testified that Defendant then tried to get to the back of the vehicle to evade officers' grasp. Defendant was able to get to the rear of his vehicle, and that is when Torres saw Defendant pull a gun. Torres testified that he yelled "gun" to warn others and discharged his firearm five times. Although he did not see Defendant's weapon pointed directly at him during the shooting, Torres testified that other officers did.

After Defendant was shot, officers opened the rear door to pull Defendant out and rendered medical assistance. Torres testified that Defendant's weapon was on the floor board and that officers removed both the weapon and Defendant from the vehicle. According to Torres, when Defendant's gun was removed from the vehicle, it was found with the hammer cocked back but stuck and an

officer accidentally discharged it when attempting to clear it.

Like the other officers, Torres testified that he did not search the vehicle but, based on his training and experience and in light of the officer-involved shooting, he believed that there was probable cause to search it without a warrant.

*Pettigrew*

Ranger Pettigrew with the Texas Ranger division of the Texas Department of Public Safety also testified. Pettigrew was called to the scene after Defendant was shot. Pettigrew testified that, when he arrived at the scene, he observed the three vehicles involved in the block-in and ramming as well as the windows broken out of Defendant's car. Pettigrew testified that he also observed a handgun on the hood of Defendant's car and that he was briefed about what had occurred. Pettigrew was also present at the scene when Defendant's gun was accidentally discharged.

Pettigrew testified that the passenger door was open when he arrived and that he did not know who opened it. Pettigrew saw the water bottle containing suspected GHB in the front seat in plain view. Pettigrew testified that he did a general "look through" of Defendant's vehicle before having it towed and obtaining a search warrant. According to Pettigrew, even if the passenger door had not been opened, he would have looked through the vehicle before putting it on the tow truck, but he did not conduct an inventory search at the scene since he knew that he would be seizing evidence from the car and wanted to obtain a search warrant for a locked box inside. Pettigrew testified that he believed that there was probable cause to search the vehicle.

Defendant also offered photographs of the car after the collision and shooting to show that the water bottle was blocked from view from the driver's side by the backpack in the passenger seat.

ANALYSIS

**Seizure of .38 Caliber Revolver**

Defendant challenges the seizure of his .38 caliber revolver from his Land Cruiser without a warrant. Although the Fourth Amendment generally prohibits warrantless seizures, the "plain view" exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S. Ct. 2301, 110 L. Ed.2d 112 (1990)). The incriminating nature of an item is "immediately apparent" if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband. Probable cause does not require certainty. *Id.* at 407 (quoting *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005)).

Witnesses here testified that officers saw the weapon in plain view during the shooting and that it was found on the floor board of the vehicle upon Defendant's extraction from the vehicle. The Court finds that the plain view exception applies. *U.S. v. De Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005) (plain view exception to warrant requirement permitted seizure of gun found in open view in the bed of pickup truck parked in garage given allegations that smuggled aliens had been held against their will for money, and officers entered garage because they did not know whether

8

additional suspects or aliens were hiding there, although officers were not clear as to whether alien had told them that his captors were armed); *U.S. v. Guidry,* 2013 WL 5427973, 4 (W.D. La. 2013) (denying suppression where gun was seen in plain view by officer who was checking the car to make sure there were no other occupants).

Even had the gun not been in plain view, the Court finds that the automobile exception also applies here. "[A]n automobile may be searched without a warrant where there are both exigent circumstances and probable cause to believe that the car contains items that law enforcement officers are entitled to seize." *U.S. v. Cisneros-Mireles*, 739 F.2d 1000, 1002 (5th Cir. 1984). A court must look to the totality of the circumstances to determine whether there was probable cause that a vehicle contained contraband. *U.S. v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Illinois v. Gates,* 462 U.S. 213, 230-31, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983)).

There was probable cause here that Defendant possessed a gun and that the gun was inside the vehicle. Again, multiple officers saw Defendant brandish a weapon in an attempt to evade law enforcement. Although Defendant's motion states that he denies the claim that he pointed his gun at law enforcement, no evidence was offered to controvert the testimony that officers' witnessed him pointing it at Torres' head.

More importantly, the retrieval of the firearm by law enforcement was made in good faith as a matter of public safety. *See, e.g., U.S. v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010) ("Common sense dictates that a firearm that could be accessed by someone at the scene and used against officers or others should be unloaded, and at least temporarily, kept in a safe place."). Given

the testimony that the weapon accidentally discharged while the scene was being processed, there is no doubt that its retrieval was in the best interests of public safety. There are no viable grounds to suppress the seizure of Defendant's handgun from his car.

**Land Cruiser Warrant**

Next, Defendant argues that the Court should suppress the items recovered from his car as a result of the search warrant obtained by Pettigrew. Defendant argues that the statement contained in the probable cause affidavit that there was a "clear plastic bottle containing suspected Gamma Hydroxybutyric Acid (GHB) in plain view on the passenger seat of the vehicle" was false, misleading, and in reckless disregard for the truth. Defendant argues that the bottle could not have been seen without opening the passenger side door and rolling down the window which, in and of itself, was a warrantless search of the vehicle and also in violation of the Fourth Amendment.

As noted above, the Court finds that the automobile exception applies to the search of the vehicle. All officers testified that, based on their experience the totality of the circumstances gave them probable cause to search, and the Court agrees with their conclusion. Defendant was at the apartment because an informant had arranged for the purchase of GHB from him and officers were aware of his criminal history. When officers blocked him in, Defendant rammed their cars and ultimately pointed a weapon at them. Officers were faced with more than sufficiently exigent circumstances to believe that the car contained contraband, and not merely the gun which he is alleged to have pointed at officers.

The Court further finds that the search warrant for the Land Cruiser did not violate the Fourth Amendment. The affidavit contains facts regarding Defendant's criminal history, his ramming of police vehicles, his possession of a handgun, and the officer-involved shooting. The affidavit also sets forth that Defendant "would be arriving at this location to deliver a quantity of Gamma Hydroxybutyric Acid (GHB)" and that the affiant observed what he suspected to be GHB inside Defendant's car. The Court finds that the affidavit sets forth probable cause that a crime had been committed and that evidence relating to the crime would probably be found inside of the Land Cruiser.

Having considered all of the testimony and evidence presented, the Court finds that Defendant has not made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included" in Pettigrew's affidavit for the Land Cruiser. *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 2676 (1978). Indeed, contrary to Defendant's claims, it was not impossible for officers to see what was contained in the bottle. Officer Jones testified that he saw the water bottle when attempting to locate identification for Defendant and, based on his training and experience, believed it to be GHB given its thick and cloudy consistency.

Similarly, Ranger Pettigrew testified that he shook the bottle and believed it to be GHB given his training and experience and the information that Defendant was purportedly involved in a GHB buy-bust transaction. Pettigrew also testified that the passenger door was open when he arrived and saw the suspected GHB. Nothing before the Court indicates that his statement in the affidavit was

11

false or misleading. Even if the bottle could not have been seen from the driver's side of the vehicle, there is no authority before the Court that would show that officers were required to put blinders on as to the suspected contraband when opening the door of the car to verify Defendant's identity or otherwise investigating and securing the scene in the course of the officer-involved shooting.

And finally, Pettigrew testified that, after Defendant rammed his vehicle and was shot, the vehicle had to be towed and that under department policy he could have done an inventory search on the vehicle anyway. The Court finds that officers acted in good faith in searching the car and in obtaining the search warrant – a warrant which all officers' testified was obtained out of an abundance of caution despite the clearly exigent circumstances and existence of probable cause. There are no grounds to suppress the search of the Land Rover.

**Cell Phones**

Finally, Defendant argues that the search warrants for four cell phones obtained after the Land Rover was searched are also not based on probable cause. Although Defendant has provided very little factually specific argument in support of this claim, the Court briefly addresses it.

Salas' affidavits state that, along with fake identification, a firearm, more than 8 gallons of GHB, and four cell phones were located in Defendant's car after Defendant was shot and arrested during a buy-bust narcotics operation. The affidavits further provide that the delivery of GHB was arranged by Defendant through text messages on a cell phone and that drug dealers often use multiple cell phones to control and operate their illicit drug trafficking operation. The Court finds that the affidavits sufficiently set forth the probable cause for searching the cell phones and the

information recovered from them should not be suppressed.

For the reasons stated above, Defendant's Motion to Suppress Evidence and Statements from Stop and Search on June 26, 2013 and Request for *Franks v. Delaware* Hearing (Dkt. 38) should be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of June, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE